UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
ANA SANCHEZ,                        )
                                    )
        Plaintiff,                  )
                                    )
    v.                              )
                                    )   Civil Action No. 16-226 (RBW)
DEVASHISH HOSPITALITY, LLC d/b/a    )
GREAT WRAPS and SAROJ BHATTARAI,    )
                                    )
        Defendants.                 )
_____ )

# MEMORANDUM OPINION

The plaintiff, Ana Sanchez, brings this action against the defendants, Devashish Hospitality, LLC d/b/a Great Wraps ("Great Wraps") and Saroj Bhatterai, as the owner and operator of the Great Wraps restaurant located at 1300 Pennsylvania Avenue where she worked as a food preparer, see Complaint ("Compl.") ¶¶ 2–3, 12, due to their "failure to pay [her] all earned overtime wages and . . . for all time worked, in violation of both federal and District of Columbia law," id. ¶ 1. Currently before the Court is the plaintiff's Motion and Memorandum in Support Thereof for Default Judgment ("Pl.'s Mot."), which "requests that the Court enter [a] default judgment against [the d]efendants . . . on all counts," Pl.'s Mot. at 1, and award her damages and attorneys' fees and costs, see id. at 11–12. For the reasons set forth below, the Court will grant the plaintiff's motion in part, enter judgment against Great Wraps and Bhatterai, and defer a ruling on the plaintiff's demand for attorneys' fees and costs pending further briefing on this demand by the plaintiff.[1]

---

[1] As the defendants have yet to make an appearance in this case, the Court relied solely upon Sanchez's Complaint and motion in rendering its decision.

## I. BACKGROUND

Great Wraps is "a [District of Columbia] domestic corporation," Compl. ¶ 18, that employed Sanchez "as a food preparer, performing non-exempt work . . . from on or about September 1998 to approximately November 2015," id. ¶¶ 12–13.[2] Sanchez alleges that she "often worked approximately [seventy-five] to [eighty] hours per week" from the end of 2012 to the end of 2014, and that she often "worked approximately [forty-five] hours per week" from December 2014, until she was terminated in September 2015. Pl.'s Mot. at 6. Sanchez was compensated at an hourly rate of $10.00, see id., Exhibit ("Ex.") 1 (Sanchez Decl.) ¶ 27, and Great Wraps and Bhatterai "issued her paychecks for the hours she worked up to [forty] hours per week, and they paid her in cash for the hours worked over [forty] in one week," id. at 5.

Sanchez claims that throughout her employment, Great Wraps and Bhatterai failed to compensate her at "one and one-half times her regular rate of pay for her overtime hours," as required by federal and District of Columbia law. Compl. ¶ 47. In addition, Sanchez asserts that, from July 2015, until the end of her employment with Great Wraps in September 2015, her compensation was below the minimum wage established by District of Columbia law, which was $10.50 during that time period. See Pl.'s Mot., Ex. 1 (Sanchez Decl.) ¶ 27. Due to the defendants' alleged failure to appropriately compensate her as required by both federal and District of Columbia law, Sanchez contends that she is owed approximately $44,830.40 under the Fair Labor Standards Act, $45,255.40 under the District of Columbia Minimum Wage Law, and $90,510.80 under the District of Columbia Wage Payment and Collection Law, plus attorneys' fees and costs in the amount of $32,573.50. See id. at 11–12.

On February 11, 2016, Sanchez filed this action against the defendants. Id. After three

---

[2] Sanchez did not work from November 10, 2013, through November 29, 2013, and for one week in March of 2015. See Pl.'s Mot., Exhibit ("Ex.") 1 (Declaration of Ana Sanchez ("Sanchez Decl.")) ¶¶ 22, 26.

months elapsed without the plaintiff advancing her case, the Court issued a show cause order due to Sanchez's failure to prosecute this matter. See Order (May 20, 2016), ECF No. 3. Thereafter, on May 28, 2016, Sanchez served Great Wraps and Bhatterai with copies of the Summons and Complaint. See Return of Service/Affidavit, ECF No. 8; see also Pl.'s Affidavit for Default, ECF No. 10. Neither Great Wraps nor Bhatterai has responded to Sanchez's Complaint. As a consequence, the Clerk of the Court entered default against both defendants on July 6, 2016. See Clerk's Entry of Default, ECF No. 11. Sanchez now moves for entry of default judgment against both defendants, and neither of the defendants has responded to Sanchez's motion.

## II.  STANDARD OF REVIEW

Rule 55 sets forth a two-step process for a party seeking a default judgment. Fed. R. Civ. P. 55(a). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Id. Second, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). Despite a plaintiff's ability to acquire a judgment by default, there are "strong policies favoring the resolution of genuine disputes on their merits." Jackson v. Beech, 636 F.2d 831, 835 (D.C. Cir. 1980); see Peak v. District of Columbia, 236 F.R.D. 13, 15 (D.D.C. 2006) (acknowledging the inherent unfairness of awarding judgment against a party for mere filing delays). Therefore, "default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party." Jackson, 636 F.2d at 836 (quoting H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe, 432 F.2d 689, 691 (D.C. Cir. 1970)); see also Teamsters Local 639–Emp'rs Health Tr. v. Boiler & Furnace Cleaners, Inc., 571 F. Supp. 2d 101, 107 (D.D.C. 2008) ("[W]hen the adversary process has been halted because of an essentially

unresponsive party[,] the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights.").

"Default establishes the defaulting party's liability for the well-pleaded allegations of the complaint." Boland v. Elite Terrazzo Flooring, Inc., 763 F. Supp. 2d 64, 67 (D.D.C. 2011) (citing Adkins v. Teseo, 180 F. Supp. 2d 15, 17 (D.D.C. 2001)); see also Adkins, 180 F. Supp. 2d at 17 ("A defaulting defendant is deemed to admit every well-pleaded allegation in the complaint."). "After establishing liability, the court must make an independent evaluation of the damages to be awarded and has 'considerable latitude in determining the amount of damages.'" Ventura v. L.A. Howard Constr. Co., 134 F. Supp. 3d 99, 103 (D.D.C. 2015) (quoting Boland, 763 F. Supp. 2d at 67). The court must only "ensure[] that there [i]s a basis for the damages specified in the default judgment." Id. (second alteration in original) (quoting Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997)). "'[T]he plaintiff must prove [her] entitlement to the amount of monetary damages requested' using 'detailed affidavits or documentary evidence' on which the court may rely." Boland v. Providence Constr. Corp., 304 F.R.D. 31, 36 (D.D.C. 2014) (quoting Fanning v. Permanent Sol. Indus., 257 F.R.D. 4, 7 (D.D.C. 2009)).

### III.   ANALYSIS

Because the Clerk has already entered defaults against both Great Wraps and Bhatterai, the Court will proceed to step two of the default judgment analysis. The Court therefore "must determine whether entry of [a] default judgment is appropriate, and if it is, whether [Sanchez] is entitled to the full amount of relief she requests." Ventura, 134 F. Supp. 3d at 103. To make this determination, the Court will assess the defendants' liability for the alleged unpaid wages and overtime compensation, the proper amount of liquidated damages, and Sanchez's request for

attorneys' fees and costs.  In making these determinations, the Court will accept Sanchez's well-pleaded allegations as true.  See id.

### A. Liability

"[F]ederal and [District of Columbia] law provide employees with a cause of action for failure to [be] pa[id] overtime wages at a rate equal to time and a half for hours worked over forty hours a week."  Martinez v. China Boy, Inc., 229 F. Supp. 3d 1, 3 (D.D.C. 2016); see also 29 U.S.C. § 207(a)(2)(C) (2012); D.C. Code §§ 32–1003(c), –1012(a) (2012).  From July 1, 2015, until July 1, 2016, employers[3] in the District of Columbia were required to pay their employees no less than $10.50 per hour.  See D.C. Code § 32–1003.  Here, Sanchez "has not produced timesheets and the defendant[s have] failed to respond," to Sanchez's Complaint; therefore, "the Court will accept [Sanchez's] declaration, submitted under the penalty of perjury, as to the hours she worked and wages she received, except to the extent that her declaration seeks relief beyond that sought in the [C]omplaint."  Martinez, 229 F. Supp. 3d at 3.

In her declaration, Sanchez represents the hours she worked and the fact that Great Wraps failed (1) to compensate her at least at the minimum wage of $10.50 from July 2015, to September 2015, and (2) to pay her for overtime from the end of 2012, to the end of her employment in September 2015.  See generally Pl.'s Mot., Ex. 1 (Sanchez Decl.).  Sanchez further contends in her declaration that based on the base pay she was entitled to receive, she is owed approximately $22,627.70 in unpaid wages and overtime compensation.  Id. ¶ 32.  Based

---

[3] Bhatterai is an employer under the Fair Labor Standards Act because he is a "person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), by "assign[ing the p]laintiff tasks and direct[ing] the means of carrying out those tasks," Compl. ¶ 34, "control[ing the p]laintiff's work schedule and employment status," id. ¶ 36, and by "pa[ying the p]laintiff an hourly wage," id. ¶ 37.  Because "the [District of Columbia Wage Payment and Collection Law] is construed consistently with the [Fair Labor Standards Act]," Bhatterai is also an employer under the District of Columbia Wage Payment and Collection law.  Ventura v. Bebo Foods, Inc., 738 F. Supp. 2d 1, 6 (D.D.C. 2010).  As a corporation, Great Wraps is also an employer under the Fair Labor Standards Act and the District of Columbia Wage Payment and Collection Law.  See Compl. ¶ 18; see also 29 U.S.C. § 203; D.C. Code Ann. § 32–1002(3).

on these uncontested facts, Sanchez has established that the defendants are liable for unpaid wages and overtime pay under both federal and District of Columbia law.

Despite this determination, "[w]hether the entry of a default judgment is appropriate is committed to the sound discretion of this Court." Boland v. Yoccabel Const. Co., 293 F.R.D. 13, 17 (D.D.C. 2013) (Walton, J.) (citing Jackson, 636 F.2d at 836). For the Court to enter a default judgment, "the defendant must be considered a 'totally unresponsive' party whose failure to 'respond to the summons and complaint, the entry of a default, and the motion for a default judgment' demonstrates plainly willful behavior." Id. (quoting Teamsters Local 639, 571 F. Supp. 2d at 107). "The Court may enter default judgment when a defendant makes no request 'to set aside the default' and gives no indication of a 'meritorious defense.'" Ventura, 134 F. Supp. 3d at 104 (quoting Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall, LLC, 531 F. Supp. 2d 56, 57 (D.D.C. 2008)). Given that both Great Wraps and Bhatterai have refused to engage in the adversary process by failing to respond to Sanchez's Complaint, have not petitioned for the Clerk to set aside the default, and have not presented any meritorious defense to Sanchez's motion, the Court finds the defendants liable and, therefore, the entry of a default judgment against them is appropriate. See id.

**B. Damages**

Having found that Sanchez has established liability, the Court must now "make an independent determination of the sum to be awarded." Yoccabel Constr. Co., 293 F.R.D. at 17 (quoting Adkins v. Teseo, 180 F. Supp. 2d 15, 17 (D.D.C. 2001)). "[The p]laintiff[] must prove these damages to a reasonable certainty," Elite Terrazzo Flooring, Inc., 763 F. Supp. 2d at 68, and the Court may rely on "affidavits, documentation, or an evidentiary hearing" to determine the appropriate award of damages, Ventura, 134 F. Supp. 3d at 104.

### 1. Unpaid Compensation

As support for her claim to recover the unpaid compensation the defendants allegedly owe her, Sanchez, in her declaration, attests to the wages she was actually paid and the hours she worked, see generally Pl.'s Mot., Ex. 1 (Sanchez Decl.), and she includes with her motion a chart listing the weeks she worked, the hourly rate she was paid, the hours she worked, the compensation she received, and the amount she contends she was actually owed per week, see id., Ex. 3 (Lost Wages—D.C. Wage Statutes ("D.C. Wages Chart")) at 2–4.  In the D.C. Wages Chart, Sanchez claims that she worked seventy-five hours per week starting from January 28, 2013, until the end of 2014, at the rate of $10 per hour, with the first forty hours being accounted for in a check and the thirty-five overtime hours paid to her in cash at her wage of $10 per hour, as opposed to time and a half at $15 per hour.  See id., Ex. 1 (Sanchez Decl.) ¶¶ 10–11; see also id., Ex. 3 (D.C. Wages Chart) at 2–3.[4]  Thus, crediting this information, the Court finds that Sanchez is entitled to ninety-three weeks of overtime pay at the rate of an additional $5 per hour for the thirty-five hours of overtime worked each week, totaling $16,275.  See id., Ex. 3 (D.C. Wages Chart) at 2–3; see also Appendix to Memorandum Opinion ("Appendix"), Table 1.  Sanchez also alleges that she worked a total of ten Sundays in 2013 and 2014, for eight hours each day.  See Pl.'s Mot., Ex. 3 (D.C. Wages Chart) at 4.  Therefore, Sanchez has demonstrated that she is entitled to an additional $5 of overtime payment for eighty hours, totaling $400.  See id., Ex. 3 (D.C. Wages Chart) at 4.

Sanchez also asserts that she worked forty-five hours per week, Monday through Friday,

---

[4] Although in her Complaint and declaration Sanchez alleges that she worked in 2012, see Compl. ¶¶ 41–42; Pl.'s Mot., Ex. 1 (Sanchez Decl.) ¶¶ 18–21, she does not list any weeks in 2012 on the D.C. Wages Chart for which she claims she is entitled to receive unpaid wages, see id., Ex. 3 (D.C. Wages Chart) at 2.  Because the D.C. Wages Chart outlines Sanchez's request for unpaid wages owed to her, the Court will rely on this chart as the basis of its calculations of her damages.

7

from the end of 2014, until her termination in September of 2015, under the same payment structure. See Pl.'s Mot., Ex. 1 (Sanchez Decl.) ¶¶ 10–11, 24–25.[5] And, when the District of Columbia increased the minimum wage to $10.50 per hour effective July 1, 2015, see D.C. Code § 32–1003(a)(4), Sanchez claims that Great Wraps and Bhatterai continued to compensate her at the rate of $10 per hour. See id., Ex. 1 (Sanchez Decl.) ¶ 27. Therefore, prior to the minimum wage increase, Sanchez has shown that she is entitled to another twenty-eight weeks of pay at the rate of an additional $5 per hour for the five overtime hours she worked each week, totaling $700. See id., Ex. 3 (D.C. Wages Chart) at 3–4; see also Appendix, Table 1.[6] And, after the minimum wage increase, Sanchez has established that she is entitled to an additional eight weeks[7] of pay at the increased rate of $5.75 per hour[8] for the five overtime hours she worked

---

[5] In her declaration, Sanchez states that "[the d]efendants did not pay [her] for [her] last two weeks of work." Pl.'s Mot., Ex. 1 (Sanchez Decl.) ¶ 30. But, in the D.C. Wages Chart accompanying her declaration, Sanchez indicates that she received compensation in the forms of both check and cash for her last two weeks of work. See id., Ex. 3 (D.C. Wages Chart) at 4. Therefore, the Court declines to award Sanchez monetary damages for her last two weeks of work, as such an award would give Sanchez a windfall because she has already received compensation for the first forty hours she worked during those two weeks.

[6] Although Sanchez notes that she did not work one week in March 2015, she accounts for all weeks of March 2015 in the D.C. Wages Chart and in her requests for relief from the Court. Compare Pl.'s Mot., Ex. 1 (Sanchez Decl.) ¶ 26, with Pl.'s Mot., Ex. 3 (D.C. Wages Chart) at 4 (indicating she worked every week in March). Thus, the Court reduced by one week the time during which Sanchez has proven the defendants are obligated to pay her.

[7] From December 1, 2014, through June 28, 2015, Sanchez would have worked a total of twenty-nine weeks; but, the D.C. Wages Chart combines the weeks of May 25, 2015 and June 1, 2015, as one week. See Pl.'s Mot., Ex. 3 (D.C. Wages Chart) at 4. In addition, from June 29, 2015, through September 11, 2015, Sanchez would have worked a total of eleven weeks; however, the D.C. Wages Chart also combines the weeks of August 24, 2015, and August 31, 2015, as being one week. See id., Ex. 3 (D.C. Wages Chart) at 4. These two entries indicate that Sanchez worked a total of forty-five hours for both two week periods, and given that the D.C. Wages Chart thoroughly details each week Sanchez worked and includes the periods of time when Sanchez did not work, the Court construes the chart's entries combining the two weeks as deliberate and not the product of a mistake. Therefore, the Court finds that Sanchez worked only forty-five hours during both of these two week periods and is entitled to receive overtime wage for five hours for each of these periods. See Pleitez v. Carney, 594 F. Supp. 2d 47, 49 (D.D.C. 2009) ("When a full documentary record is unavailable, a court may draw reasonable inferences from . . . whatever documentation has been presented." (emphasis added)).

[8] In the D.C. Wages Chart, Sanchez calculates the overtime wage for the $10.50 per hour minimum wage rate as $15.25. See Pl.'s Mem., Ex. 3 (D.C. Wages Chart) at 4. However, for a minimum hourly wage rate of $10.50, time and a half for overtime amounts to a hourly wage of $15.75. In any event, because the Court can independently confirm the appropriate calculation, the Court will disregard Sanchez's miscalculation provided in the D.C. Wages Chart.

each week, totaling $230.  See Appendix, Table 2.  Moreover, Sanchez has proven that she is owed the wages for the difference between the prior minimum wage and the new minimum wage, totaling $160.[9]  See id., Table 3.  Therefore, independently confirming Sanchez's calculations, the Court concludes that the defendants owe her a total of $17,765 in unpaid wages and overtime pay.[10]

### 2. Liquidated Damages

Sanchez also asserts that she is entitled to liquidated damages for each count of her Complaint.  See Pl.'s Mot. at 6–10.  Both federal and District of Columbia law permit an award of liquidated damages against an employer that fails to compensate an employee as statutorily required.  See 29 U.S.C. § 216(b); D.C. Code § 32–1012(b)(1).  "[District of Columbia] law currently provides for recovery of 'unpaid wages' and 'an additional amount as liquidated damages equal to treble the amount of unpaid wages,' while only additional liquated damages equal to the amount of unpaid wages are available under federal law," Martinez, 229 F. Supp. 3d at 3 (quoting D.C. Code § 32–1012(b)(1)).  Because "[District of Columbia] law is more generous to employees . . . , the Court will first assess [whether liquidated] damages [should be

---

[9] The minimum wage increase became effective on Wednesday July 1, 2015.  See D.C. Code § 32–1003(a)(4).  Therefore, contrary to the calculations provided in the D.C. Wages Chart, see Pl.'s Mot., Ex. 3 (D.C. Wages Chart) at 4 (claiming Sanchez should have received $10.50 per hour from June 29, 2015, through July 5, 2015), Sanchez has shown that she is entitled to only $10 per hour for the Monday and Tuesday of that week.  Accordingly, the Court's final calculation accounts for an hourly rate of $10 per hour on those two days, and $10.50 per hour for the other days of that week.

[10] In her motion, Sanchez claims that she is owed $22,627.70.  See Pl.'s Mot., Ex. 1 (Sanchez Decl.) ¶ 32.  But, the Court's calculations indicate that the amount Sanchez has established she is owed is actually $17,765.  Taking into consideration the miscalculations made by Sanchez as noted by the Court in footnotes five through nine, the difference between the two sums is $4,862.70, which is the total difference between the amount Sanchez earned each week ($400), and the amount she received each week as reflected on her pay checks($363.90).  See generally id., Ex. 3 (D.C. Wages Chart).  The Court assumes these differences reflect the weekly taxes and benefits that were deducted from Sanchez's wages.  In any event, because Sanchez does not allege that she was not paid for the forty regular hours of work each week, see generally Compl.; Pl.'s Mot., Ex. 1 (Sanchez Decl.) ¶¶ 10, 17 (noting that Great Wraps would "issue[ her] paychecks for . . . work hours up to [forty] hours per week"), and because District of Columbia law provides relief for only unpaid wages, see D.C. Code § 32–1012, the Court declines to award Sanchez the difference between the total wages she earned and the amount she received through her pay checks.

awarded] under [District of Columbia] law and [if so, it] will not award a duplicative amount pursuant to federal law." Ventura, 134 F. Supp. 3d at 104 (citation omitted).

Sanchez claims that she is eligible for three times the amount of overtime wages owed to her as liquidated damages. Pl.'s Mot. at 9–10 (citing D.C. Code §§ 32–1302, –1303(4), –1308). However, the provision of the District of Columbia Code authorizing liquidated damages treble the amount of an employee's unpaid wages did not take effect until December 24, 2013. See Ventura, 134 F. Supp. 3d at 105 (citing Fiscal Year 2014 Budget Support Act of 2013, D.C. Law 20–61).[11] Therefore, contrary to Sanchez's position, see Pl.'s Mot. at 9–10, she is entitled to liquidated damages treble the amount of her unpaid wages only from December 24, 2013, until the end of her employment with Great Wraps. Prior to December 24, 2013, "the District enacted an emergency act—the Fiscal Year 2014 Budge Support Emergency Act of 2013 ('A20–130')—which authorized treble damages awards between October 1, 2013 and October 28, 2013." Amaya v. Logo Enterprises, LLC, __F. Supp. 3d__, __, 2017 WL 1750257, at *4 (D.D.C. May 4, 2017). Accordingly, Sanchez is entitled to the following liquidated damages: from January 28, 2013, to September 30, 2013, her liquidated damages are the amount of her unpaid wages; from October 1, 2013, to October 28, 2013, her liquidated damages are treble the amount of her unpaid wages under the A20–130; from October 29, 2013 until December 23, 2013, her liquidated damages are the amount of her unpaid wages; and from December 24, 2013, to September 13, 2015, her liquidated damages are treble the amount of her unpaid wages. Thus, the Court awards Sanchez $38,901 in liquidated damages. See Appendix, Table 4.

---

[11] In relevant part, section 32–1303 of the District of Columbia Code permits an award of liquidated damages in the amount of either "10 per centum of the unpaid wages for each working day during which such failure shall continue after the day upon which payment is hereunder required, or an amount equal to treble the unpaid wages, whichever is smaller." § 32–1303(a). "Using the former calculation, if [Sanchez] were owed roughly [$17,500] in unpaid wages for over a year, [she] would be owed at a minimum [$638,750] in liquidated damages ([$17,500] x 10% x 365 days)." Amaya, __ F. Supp. 3d at __, 2017 WL 1750257, at *3 n.5. Therefore, the Court will treble Sanchez's unpaid damages, as that will result in the smaller liquidated damages award.

**C. Attorneys' Fees**

Both federal and District of Columbia law authorize the award of attorney's fees in suits for unpaid wages. See 29 U.S.C. § 216(b); D.C. Code §§ 32–1012(c), –1308(b). However, "[c]ourts are obliged to exercise discretion in awarding attorney's fees when cases are resolved by default judgments." Boland, 293 F.R.D. at 20 (citing Flynn v. Mastro Masonry Contractors, 237 F. Supp. 2d 66, 70 (D.D.C. 2002)). Attorneys' fees are "calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." Ventura, 134 F. Supp. 3d at 105 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Moreover, this Circuit requires that the billing rate be "reasonable" and "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Id. (quoting Kattan by Thomas v. District of Columbia, 995 F.2d 274, 278 (D.C. Cir. 1993)). Furthermore, "a party seeking attorneys' fees 'ha[s] the burden to produce satisfactory evidence—in addition to [her] attorney's own affidavits—that [her] requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" Id. (emphasis and first alteration in original) (quoting Eley v. District of Columbia, 793 F.3d 97, 104 (D.C. Cir. 2015)). Therefore, the Court "may not rely by default on a version of the Laffey Matrix[12] without additional evidence from the party seeking . . . fees," and the "moving party must affirmatively 'demonstrate that her

---

[12] Fee applicants are permitted

> to submit attorneys' fee matrices as one type of evidence that "provides[s] a useful starting point" in calculating the prevailing market rate. The most commonly used fee matrix is the "Laffey Matrix"—the schedule of prevailing rates compiled in Laffey v. Nw. Airlines, Inc. (Laffey I), 572 F. Supp. 354, 371 (D.D.C. 1983) [(holding that a fee applicant "must provide 'specific evidence of the prevailing community rate for the type of work for which he seeks an award.'" (citation omitted))], aff'd in part, rev'd in part on other grounds, Laffey v. Nw. Airlines, Inc. (Laffey II), 746 F.2d 4 (D.C. Cir. 1984), overruled in part on other grounds, Save Our Cumberland Mountains, Inc. v. Hodel, 857 F.2d 1516 (D.C. Cir. 1988).

Eley, 793 F.3d at 100 (first alteration in original) (citation omitted).

suggested rates [are] appropriate' by establishing their conformity with rates charged in the community for similar services." Id. (alterations in original) (quoting Eley, 793 F.3d at 105).

As support for her position that she is entitled to an attorneys' fees award in the amount of $38,581.10, Sanchez "attached [an affidavit] and time keeping records [reflecting her] attorneys' fees incurred in this matter." Pl.'s Mot. at 11.  In his affidavit, one of Sanchez's counsel provided the hourly billing rates for the various attorneys and staff who worked on this matter and noted that these rates are "the rates [that the] firm charges to fee-paying clients and are at or below the market rates for attorneys of our respective levels of experience." Id., Ex. 4 (Affidavit of Daniel A. Katz ("Katz Aff.")) ¶ 12.  However, his affidavit does not "provide[] the Court with satisfactory evidence that the requested hourly rate constitutes the prevailing rate in this community for this type of litigation by attorneys with comparable experience." Ventura, 134 F. Supp. 3d at 106 (emphases added) (holding that it was insufficient for an attorney with fifteen years of experience requesting attorneys' fees for a Fair Labor Standards Act litigation claim to provide only evidence of the rates for an attorney with twenty-six years of experience and an attorney with four to five years of experience).  In fact, Sanchez's counsel has failed to provide any evidence of other billing rates in the community for this type of litigation, let alone anyone of the same level of experience.  See generally Pl.'s Mot., Ex. 4 (Katz Decl.).  Therefore, in accord with this Court's jurisprudence, the Court will defer its ruling on Sanchez's request for attorneys' fees and costs to allow Sanchez to "submit additional evidence demonstrating that [her counsels'] requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Ventura, 134 F. Supp. 3d at 106–07.

## IV.     CONCLUSION

For the foregoing reasons, the Court will grant Sanchez's motion for entry of a default judgment and will award her damages in the amount of $56,666, specifically $17,765 in unpaid wages and overtime compensation and $38,901 in liquidated damages.  However, the Court will defer its ruling on Sanchez's request for attorneys' fees and costs until the Court receives additional evidence supplementing the requested rates by her counsel.

**SO ORDERED** this 18th day of September, 2017.[13]

REGGIE B. WALTON<br>United States District Judge

---

[13] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.

## APPENDIX

**Table 1 – Unpaid Wages from January 28, 2013, Through June 28, 2015**

| Date Range | D.C. Overtime Wage | Hours Worked Overtime | Amount Paid by Cash for Overtime | Amount of Overtime Earned | Overtime Owed per Week | Number of Weeks | Wages Owed |
|---|---|---|---|---|---|---|---|
| 1/28/2013 – 11/30/2014 | $15 | 35 | $350 | $525 | $175 | 93 weeks | $16,275 |
| 12/1/2014 – 6/28/2015 | $15 | 5 | $50 | $75 | $25 | 28 weeks | $700 |
| 10 – 8 hour Sundays | $15 | 80 | $800 | $1,200 | $400 | -- | $400 |
| **Total:** | | | | | | | $17,375 |

**Table 2 – Unpaid Overtime Wages from June 29, 2015, Through July 5, 2015**

| Date Range | D.C. Overtime Wage | Hours Worked Overtime | Amount Paid in Cash for Overtime | Amount Earned for Overtime | Amount Owed for Overtime | Number of Weeks | Wages Owed |
|---|---|---|---|---|---|---|---|
| 6/29/2015– 9/13/2015 | $15.75 | 5 | $50 | $78.75 | $28.75 | 8 | $230 |
| **Total:** | | | | | | | $230 |

**Table 3 – Unpaid Regular Wages from July 1, 2015, Through September 13, 2015**

| Date Range | D.C. Minimum Wage | Hours Worked | Amount Paid by Check for Minimum Wage | Amount Earned for Regular Wage | Regular Wage Owed | Number of Weeks | Regular Wages Owed Total: |
|---|---|---|---|---|---|---|---|
| 7/1/2015 – 9/13/2015 | $10.50 | 40 | $363.90 | $420 | $20 | 8 | $160 |
| **Total:** | | | | | | | $160 |

**Table 4 – Liquidated Damages**

| Date Range | Unpaid Wages | Applicable Liquidated Damages Amount | Liquidated Damages | Total |
|---|---|---|---|---|
| 1/28/2013 – 9/30/2013 | $6,125 | 1x | $6,125 | $12,250 |
| 10/1/2013 – 10/28/2014 | $700 | 3x | $2,100 | $2,800 |
| 10/29/2013 – 12/23/2013 | $875 | 1x | $875 | $1,750 |
| 12/24/2013 – 11/30/2014 | $8,575 | 3x | $25,725 | $34,300 |
| 12/1/2014 – 6/28/2015 | $700 | 3x | $2,100 | $2,800 |
| 6/29/2015 – 9/13/2015 | $390 | 3x | $1,176 | $1,566 |
| 5 – 8 hour Sundays in 2013 | $200 | 1x | $200 | $400 |
| 5 – 8 hour Sundays in 2014 | $200 | 3x | $600 | $800 |
| **Total:** | $17,765 | | $38,901 | $56,666 |